**STIEGLER LAW FIRM LLC**
Charles Joseph Stiegler #245973
Address: 318 Harrison Ave, Ste 104,
New Orleans, LA 70124-3126
Phone: 504-267-0777 | Fax: 504-513-3084
charles@stieglerlawfirm.com

**CHIRINOS LAW FIRM PLLC**
Tulio D. Chirinos (*Pro Hac Vice* forthcoming)
Jenny M. Lewis (*Pro Hac Vice* forthcoming)
370 Camino Gardens Blvd., Ste 106
Boca Raton, FL 33432
Telephone: (561) 299-6334
tchirinos@chirinoslawfirm.com
jlewis@chirinoslawfirm.com

Attorneys for Plaintiffs Allison Shackley and Gina Ruggieri,
Individually and as Representatives of a Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON SHACKLEY and GINA RUGGIERI , individually and as representatives of a class of participants and beneficiaries on behalf of the Pacific Dental Services, LLC 401(k) Plan,<br><br>              Plaintiffs,<br><br>      vs.<br><br>PACIFIC DENTAL SERVICES, LLC and DOES 1 to 10 inclusive,<br><br>              Defendants. | CASE NO. _____<br><br>**CLASS ACTION COMPLAINT** |

1.      Plaintiffs, Allison Shackley and Gina Ruggieri (together "Plaintiffs"), individually, as representatives of a class of participants and beneficiaries described below, and on behalf of the Pacific Dental Services, LLC 401(k) Plan (the "Plan"), bring this Employee Retirement Income Security Act of 1974 ("ERISA")[1] action on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3) and Rule 23 of the Federal Rules of Civil Procedure against Defendants Pacific Dental Services, LLC ("Pacific") to remedy Defendants' breaches of fiduciary duties and other violations of ERISA, 29 U.S.C. §§ 1001, *et seq.*

2.      ERISA requires fiduciaries to act "solely in the interest of participants and beneficiaries," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law", *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996), and require fiduciaries to have "an eye single toward beneficiaries' interests", *Pegram v. Herdrich*, 530 U.S. 211, 235, 147 L. Ed. 2d 164, 120 S. Ct. 2143 (2000).

3.      ERISA also mandates that fiduciaries must discharge their fiduciary duties "in accordance with the documents and instruments governing the plan". 29 U.S.C. §§ 1104(a)(1)(D). The Supreme Court has clearly stated that there is "no exemption from this duty . . . ." *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, 555 U.S. 285, 300, 129 S. Ct. 865 (2009).

4.      Instead of loyally and prudently acting in the best interest of Plan participants, Defendants chose to use Plan assets to benefit Pacific, to the detriment of the Plan and its participants, by using millions of dollars of Plan assets to offset Pacific's obligations to make contributions to the Plan.

---

[1] 29 U.S.C. §§1001–1461.

CLASS ACTION COMPLAINT

Defendants took this action despite knowing that the Plan document explicitly required them to *first* use the Plan assets for the benefit of Plan participants.

5.     To remedy these fiduciary breaches and ERISA violations, Plaintiffs, individually and as representatives of a class of participants and beneficiaries of the Plan, bring this action on behalf of the Plan under 29 U.S.C. § 1132(a)(2) and (3) to enforce Defendants' personal liability under 29 U.S.C. § 1109(a) to make good to the Plan all losses resulting from each breach of fiduciary duty and to restore to the Plan any profits made through Defendants' use of the Plan's assets. In addition, Plaintiffs seek such other equitable or remedial relief for the Plan as the Court may deem appropriate.

## JURISDICTION AND VENUE

6.     This Court has exclusive subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 et seq.

7.     This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

8.     Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because some or all of the violations of ERISA occurred in this District, Plaintiff Shackley lives in this District, and Defendants reside and may be found in this District.

## PARTIES

9.     The Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and §1002(34) that covers

eligible employees of Pacific and is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1103(a).

10.     Plaintiff Allison Shackley is a resident of the State of California, was previously employed by Pacific until 2023, and was a participant in the Plan during the class period under 29 U.S.C. § 1002(7).

11.     Plaintiff Gina Ruggieri is a resident of the State of Tennessee, was previously employed by Pacific until 2023, and is a current participant in the Plan under 29 U.S.C. § 1002(7).

12.     During the class period, Plaintiffs' individual accounts were charged, and Plaintiffs paid, for a share of the Plan's administrative expenses.

13.     Plaintiffs have Article III standing to bring this action on behalf of the Plan because they suffered actual injuries through the misallocation of Plan forfeitures by Defendants with regard to the Plan as it relates to their individual 401(k) accounts. This injury is fairly traceable to Defendants' unlawful conduct in using Plan forfeitures for their own benefit and this harm is likely to be redressed by a favorable judgment providing appropriate equitable relief to the Plaintiffs and to the class.

14.     Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond their own injuries.

15.     The Plaintiffs and all participants in the Plan did not have knowledge of all material facts (including, among other things, the misallocation of Plan forfeitures) necessary to understand that Defendants breached their fiduciary duties until shortly before this suit was filed.

16.     Having never managed a very large 401(k) Plan, Plaintiffs, and all participants in the Plan, lacked actual knowledge of how Plan forfeitures should

be allocated by the Defendants and also lacked actual knowledge of how Plan forfeitures were used by the Defendants.

17.    Pacific is a dental healthcare company incorporated in the state of Delaware with its principal place of business in California at 17000 Red Hills Ave Irvine, California 92614.

18.    Pacific is the Plan sponsor under 29 U.S.C. § 1002(16)(B) and the Plan Administrator under 29 U.S.C. § 1002(16)(A) with broad authority over the administration and management of the Plan.

19.    Pacific and the Administrator are both named fiduciaries of the Plan and each exercised discretionary authority and discretionary control over the management and administration of the Plan with respect to the matters alleged herein and were fiduciaries of the Plan within the meaning of 29 U.S.C. § 1002(21)(A). Hereafter, a person or group of people who exercise authority or control of Plan assets will be referred to as a "Plan Fiduciary" or "Plan Fiduciaries."

20.    The defendants sued by the fictitious names DOES 1 through 10, inclusive, are Plan Fiduciaries unknown to Plaintiffs who exercise or exercised discretionary authority or discretionary control respecting the management or disposition of its assets, or have had discretionary authority or discretionary responsibility in the administration of the Plan and are responsible or liable in some manner for the conduct alleged in this Complaint. Plaintiffs will amend this Complaint to allege the true names and capacities of such fictitiously named defendants when they are ascertained.

## FACTS APPLICABLE TO ALL COUNTS

21.    In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund.

CLASS ACTION COMPLAINT

22.    As an individual account, defined contribution retirement plan, the Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

23.    Throughout the class period, the Plan incurred plan administrative expenses through paying service providers both direct and indirect compensation to provide services to the Plan.

24.    Throughout the class period the Plan paid direct and/or indirect compensation for services ranging from, among others, recordkeeping and administration, accounting, consulting, trustee services, loan processing, participant communications, investment management services, and legal services. Hereafter the payment for services from Plan assets shall collectively be referred to as "Administrative Expenses."

25.    The use of Plan assets to pay Administrative Expenses from the accounts of Plan participants reduces the funds available to Plan participants for distribution and/or investing and deprives the Plan of funds that otherwise would have been earned on the amounts deducted.

26.    Throughout the class period, the Plan has been funded by a combination of wage withholdings by participants and Pacific matching contributions, each of which is deposited into the Plan's trust fund and allocated to individual participant accounts.

27.    Upon their deposit into the Plan's trust fund, all participant contributions and Pacific contributions become assets of the Plan.

CLASS ACTION COMPLAINT

28.    Under the terms of the Plan,[2] participants are immediately vested in their own contributions, as well as any actual earnings thereon. Participants are vested in Pacific matching contributions and any actual earnings thereon based on various schedules, dependent on their employer group, typically ranging from four to six years before being fully vested.

29.    To the extent a participant is not 100% vested upon termination of employment, the participant forfeits the value of Pacific contributions and any actual earnings thereon (hereafter "Forfeited Plan Assets") in his or her account on the earlier of the date the participant takes a distribution of his or her vested interest in the Plan or the date the participant incurs a five-consecutive-year break in vesting service (within the meaning of the Plan document).

30.    Defendants have represented that, under the terms of the Plan document, forfeited nonvested amounts are required *first* to be used to "pay any administrative expenses" of the Plan and once the Administrative Expenses of the Plan are paid that *any remaining* forfeitures are or may be used to reduce Pacific's contributions into the Plan.

31.    Accordingly, under the terms of the Plan document, the Plan Fiduciaries did not have discretion related to the use of Forfeited Plan Assets.

32.    Under ERISA, when making the decision regarding the use of Forfeited Plan Assets, the Plan Fiduciaries have been and are required by 29 U.S.C. § 1104 (a)(1)(D) to discharge their duties "in accordance with the documents and instruments governing the plan . . . ."

---

[2] All references to the Plan's terms are derived from the most recent Summary Plan Description, which "describes the Plan's benefits and obligations as contained in the legal Plan document, which governs the operation of the Plan."

CLASS ACTION COMPLAINT

33.     Additionally, as explicitly provided in 29 U.S.C. § 1002(34), the Plan Fiduciaries also had the discretion to allocate "forfeitures of accounts of other participants" to participants.

34.     Instead, the Plan Fiduciaries have consistently chosen to utilize a significant portion[3] of the Forfeited Plan Assets to benefit Pacific at the expense of the Plan's participants.

35.      During 2018, a minimum of $721,280 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Administrative Expenses.

36.     During 2018, instead of using the Forfeited Plan Assets to reduce Administrative Expenses as required by the express terms of the Plan document, the Plan Fiduciaries caused Plan Participants to pay a minimum of $625,553 in Administrative Expenses through deductions from the accounts of Plan Participants and also caused Plan Participants to pay other Administrative Expenses indirectly.

37.     During 2018 the Plan Fiduciaries, contrary to the express terms of the Plan document, exercised discretion over, and control of, Plan assets when deciding to use $721,280 in Forfeited Plan Assets to, among other things, offset Pacific contributions instead of paying all Administrative Expenses with the Forfeited Plan Assets.

38.     Moreover, on December 31, 2018, unallocated Forfeited Plan Assets were $823,642.

39.     During 2018, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of

---

[3] Throughout the class period, the Plan Fiduciaries did use a small portion of the Forfeited Plan Assets to pay Administrative Expenses of the Plan, but the amount used did not cover the full amount of Administrative Expenses as the Plan required. Amounts indicated in subsequent paragraphs do not include amounts of Forfeited Plan Assets that were used to pay Administrative Expenses.

CLASS ACTION COMPLAINT

$823,642 in a timely fashion for the exclusive benefit of Plan Participants to avoid having unallocated Forfeited Plan Assets of $823,642 on December 31, 2018.

40.    In the alternative, during 2018 the terms of the Plan document granted discretion to the Plan Fiduciaries with respect to the use and control of Plan assets and the Plan Fiduciaries exercised that discretion in a manner that benefited Pacific at the expense of the Plan and Plan participants by failing to use unallocated Forfeited Plan Assets to pay Administrative Expenses or allocate back to Plan participants, and instead used the Forfeited Plan Assets to reduce required Pacific contributions.

41.    During 2019, a minimum of $1,252,561 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Administrative Expenses.

42.    During 2019, instead of using the Forfeited Plan Assets to reduce Administrative Expenses as required by the express terms of the Plan document, the Plan Fiduciaries caused Plan participants to pay a minimum of $990,963 in Administrative Expenses through deductions from the accounts of Plan participants and also caused Plan participants to pay other Administrative Expenses paid indirectly.

43.    During 2019 the Plan Fiduciaries, contrary to the express terms of the Plan document, exercised discretion over, and control of, plan assets when deciding to use $1,252,561 in Forfeited Plan Assets to, among other things, offset Pacific contributions instead of paying all Administrative Expenses with the Forfeited Plan Assets.

44.    Moreover, on December 31, 2019, unallocated Forfeited Plan Assets were $662,744.

45.    During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated Forfeited Plan Assets of

CLASS ACTION COMPLAINT

$662,744 in a timely fashion for the exclusive benefit of Plan participants to avoid having unallocated Forfeited Plan Assets of $662,744 on December 31, 2019.

46.    During 2020, a minimum of $1,231,978 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Administrative Expenses.

47.    During 2020, instead of using the Forfeited Plan Assets to reduce Administrative Expenses as required by the express terms of the Plan document, the Plan Fiduciaries caused Plan participants to pay a minimum of $990,963 in Administrative Expenses through deductions from the accounts of Plan participants and also caused Plan participants to pay other Administrative Expenses indirectly.

48.    During 2020 the Plan Fiduciaries, contrary to the express terms of the Plan document, exercised discretion over, and control of, plan assets when deciding to use $1,206,694 in Forfeited Plan Assets to, among other things, offset Pacific contributions instead of paying all Administrative Expenses with the Forfeited Plan Assets.

49.    Moreover, on December 31, 2020, unallocated Forfeited Plan Assets were $1,407,268.

50.    During 2020, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $1,407,268 in a timely fashion for the exclusive benefit of Plan participants to avoid having unallocated Forfeited Plan Assets of $1,407,268 on December 31, 2020.

51.    During 2021, a minimum of $1,206,694 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Administrative Expenses.

52.    During 2021, instead of using the Forfeited Plan Assets to reduce Administrative Expenses as required by the express terms of the Plan document,

CLASS ACTION COMPLAINT

the Plan Fiduciaries caused Plan participants to pay a minimum of $1,057,881 in Administrative Expenses through deductions from the accounts of Plan participants and also caused Plan participants to pay other Administrative Expenses indirectly.

53.    During 2021 the Plan Fiduciaries, contrary to the express terms of the Plan document, exercised discretion over, and control of, plan assets when deciding to use $1,206,694 in Forfeited Plan Assets to, among other things, offset Pacific contributions instead of paying all Administrative Expenses with the Forfeited Plan Assets.

54.    Moreover, on December 31, 2021, unallocated Forfeited Plan Assets were $2,126,282.

55.    During 2021, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $2,126,282 in a timely fashion for the exclusive benefit of Plan participants to avoid having unallocated Forfeited Plan Assets of $2,126,282 on December 31, 2021.

56.    During 2022, a minimum of $2,240,192 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Administrative Expenses.

57.    During 2022, instead of using the Forfeited Plan Assets to reduce Administrative Expenses as required by the express terms of the Plan document, the Plan Fiduciaries caused Plan participants to pay a minimum of $755,571 in Administrative Expenses through deductions from the accounts of Plan participants and also caused Plan participants to pay other Administrative Expenses indirectly.

58.    During 2022 the Plan Fiduciaries, contrary to the express terms of the Plan document, exercised discretion over, and control of, plan assets when deciding to use $2,240,192 in Forfeited Plan Assets to, among other things,

CLASS ACTION COMPLAINT

offset Pacific contributions instead of paying all Administrative Expenses with the Forfeited Plan Assets.

59.    Moreover, on December 31, 2022, unallocated Forfeited Plan Assets were $1,602,776.

60.    During 2022, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $1,602,776 in a timely fashion for the exclusive benefit of Plan Participants to avoid having unallocated Forfeited Plan Assets of $1,602,776 on December 31, 2022.

61.    During 2023, a minimum of $2,341,184 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Administrative Expenses.

62.    During 2023, instead of using the Forfeited Plan Assets to reduce Administrative Expenses as required by the express terms of the Plan document, the Plan Fiduciaries caused Plan participants to pay a minimum of $1,007,316 in Administrative Expenses through deductions from the accounts of Plan participants and also caused Plan participants to pay other Administrative Expenses indirectly.

63.    During 2023 the Plan Fiduciaries, contrary to the express terms of the Plan document, exercised discretion over, and control of, plan assets when deciding to use $2,341,184 in Forfeited Plan Assets to, among other things, offset Pacific contributions instead of paying all Administrative Expenses with the Forfeited Plan Assets.

64.    Moreover, on December 31, 2023, unallocated Forfeited Plan Assets were $1,191,287.

65.    During 2023, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $1,191,287 in a timely fashion for the exclusive benefit of Plan participants to

CLASS ACTION COMPLAINT

avoid having unallocated Forfeited Plan Assets of $1,191,287 on December 31, 2023.

66.    The amount of Administrative Expenses specifically identified in this Complaint do not include undisclosed indirect compensation paid by Plan participants. Therefore, these allegations likely understate the actual Administrative Expenses paid by Plan participants.

67.    In the alternative, the terms of the Plan document granted discretion to the Plan Fiduciaries with respect to the use and control of Forfeited Plan Assets. The Plan Fiduciaries improperly, disloyally, and imprudently exercised that discretion to benefit Pacific at the expense of the Plan and Plan Participants by failing to use unallocated Forfeited Plan Assets to pay Administrative Expenses or allocate back to Plan Participants and, instead, exercised that discretion to use Forfeited Plan Assets to reduce required Company contributions.

68.    As described in detail above, throughout the class period, the Plan Fiduciaries' improperly, disloyally, and imprudently exercised discretion when deciding to use Forfeited Plan Assets to reduce employer contributions.

69.    Additionally, that improper, disloyal, and imprudent exercise of discretion was in the best interest of Pacific because that option decreased Pacific's own contribution costs.

70.    Similarly, as described in detail above, throughout the Class Period, the Plan Fiduciaries' decisions to use Forfeited Plan Assets to reduce employer contributions instead of paying Administrative Expenses reduced the value of Plan assets and the accounts of Plan participants and the benefits available to Plan participants.

71.    As described in detail above, throughout the class period, the Plan Fiduciaries exercised discretion over, and control of, plan assets when directing

CLASS ACTION COMPLAINT

the use of Participants' accounts to pay Administrative Expenses to service providers.

72.    There are no facts or circumstances throughout the class period that make the Plan Fiduciaries' decisions to use Forfeited Plan Assets to reduce Pacific contributions consistent with discharging their duties with respect to the Plan *solely* in the interest of the participants and beneficiaries **and for the exclusive purpose of providing benefits to participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan.

73.    Likewise, there are no facts or circumstances throughout the class period that make the Plan Fiduciaries' decisions to violate the terms of the Plan document with respect to Forfeited Plan Assets to reduce Pacific contributions consistent with discharging their duties with respect to the Plan *solely* in the interest of the participants and beneficiaries **and for the exclusive purpose of providing benefits to participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan.

74.    As described in detail above, throughout the class period, the Plan Fiduciaries improperly, disloyally and imprudently exercised discretion over, and control of, Plan assets and consistently and reflexively chose to use the Forfeited Plan Assets for Pacific's interest, to the detriment of the Plan and Plan participants, by allocating Forfeited Plan Assets toward reducing Pacific's outstanding and unpaid contributions owing to the Plan.

75.    All else being equal, had the Plan Fiduciaries decided throughout the class period to use Forfeited Plan Assets to defray Administrative Expenses or allocated the Forfeited Plan Assets back to eligible participants, the value of the Plan and the value of the accounts of the Plan participants would have been greater thereby providing greater retirement benefits to Plan participants.

CLASS ACTION COMPLAINT

# CLASS ACTION ALLEGATIONS

76.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

77.    In acting in their representative capacity for the Plan, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiffs seek to certify, and to be appointed as representative of, the following class:

> All participants and beneficiaries of the Pacific Dental Services, LLC 401(k) Plan (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning December 19, 2018, and running through the date of judgment.

78.    The class includes over 18,000 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

79.    There are questions of law and fact common to this class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary duties to the Plan and took the actions and omissions alleged as the Plan and not as to any individual participant. Thus, common questions of law and fact include but are not limited to the following:

a.    Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

b.    Whether Defendants breached their fiduciary duties to the Plan with respect to their management and allocation of Plan assets;

c.    Whether Plan Fiduciaries engaged in prohibited transactions with Plan assets;

d.    What are the losses to the Plan resulting from each alleged breach of ERISA; and

e. What Plan-wide equitable and other relief the Court should impose to remedy Defendants' alleged breaches.

80.   Plaintiffs' claims are typical of the claims of the class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were participants during the time period at issue and all participants in the Plan were harmed by Defendants' misconduct.

81.   Plaintiffs will adequately represent the class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were participants in the Plan during the class period, have no interest that conflicts with the class, are committed to the vigorous representation of the class, and have engaged experienced and competent lawyers to represent the class.

82.   Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a); and adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

83.   Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

CLASS ACTION COMPLAINT

84. Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the class.

## COUNT I

### Breach of the Duty to Follow Terms of the Plan Document
### (29 U.S.C 1104(a)(1)(D))

85. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

86. When exercising control over Forfeited Plan Assets and using them to reduce Pacific contributions, the Plan Fiduciaries failed to discharge their duties in accordance with the terms of the Plan document in violation of ERISA, which required that Forfeited Plan Assets must first be used to pay any Administrative Expenses.

87. As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty to follow the terms of the Plan document.

88. Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

89.    Plaintiffs have suffered losses as a direct result of the Defendants'
failure to follow the terms of the Plan document.

## COUNT II

### Breach of the Duty of Loyalty

### (29 U.S.C. 1104(a)(1)(A))

90.    Plaintiffs reallege and incorporate herein by reference each and
every allegation contained in the preceding paragraphs of this Complaint as
though fully set forth herein.

91.    When exercising discretion and control over Plan forfeitures and
using them to reduce Pacific contributions, the Plan Fiduciaries considered the
best interest of Pacific as opposed to participants, in violation of ERISA.

92.    Alternatively, when exercising discretion and control over Plan
forfeitures and failing to use them to defray the reasonable costs of administering
the Plan, the Plan Fiduciaries considered the best interests of Pacific, as opposed
to participants, in violation of ERISA.

93.    As a direct and proximate result of Defendants' fiduciary breaches
described herein, the Plan suffered injury and loss for which they are personally
liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. §
1109, including, without limitation, the disgorgement of all ill-gotten profits to
Defendants resulting from the breach of their duty of loyalty.

94.    Each Defendant knowingly participated in the breach of the other
Defendants, knew that such acts were a breach, enabled other Defendants to
commit a breach by failing to lawfully discharge their own fiduciary duties, knew
of the breach by the other Defendants, and failed to make any reasonable effort
under the circumstances to remedy the breach. Thus, each Defendant is liable for
the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

CLASS ACTION COMPLAINT

95.    Plaintiffs have suffered losses as a direct result of Defendants' breach of their duty of loyalty.

## COUNT III

## Breach of the Duty of Prudence

## (29 U.S.C. 1104(a)(1)(B))

96.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

97.    When exercising discretion and control over Plan forfeitures and using them to reduce Pacific contributions, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act **_solely_** in the interest of the Plan participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan, in violation of ERISA.

98.    In deciding how to allocate forfeitures, Defendants utilized an imprudent and flawed process. Despite the conflict of interest presented by this decision, Defendants failed to undertake any reasoned and impartial decision-making process to determine whether using the Forfeited Plan Assets in the Plan to reduce Pacific's own contribution expenses, as opposed to the Administrative Expenses charged to participant accounts, was in the best interest of the Plan's participants or was prudent, and failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors.

CLASS ACTION COMPLAINT

99.   By refusing to use Forfeited Plan Assets to eliminate the Administrative Expenses charged to participant accounts, and instead deciding to use these Plan assets to reduce Pacific's own contribution expenses, Defendants caused the Plan to receive fewer contributions that would otherwise have increased Plan assets, and caused participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the Forfeited Plan Assets to pay Plan Administrative Expenses.

100.   Had Defendants conformed with the minimum standard of care required under ERISA, they would not have used forfeitures to reduce Pacific contributions.

101.   Alternatively, had Defendants conformed with the minimum standard of care required under ERISA, they would have used forfeitures to defray reasonable expenses of administering the Plan.

102.   Plaintiffs have suffered losses as a direct result of the Defendants' breach of their duty of prudence.

## COUNT IV

### Prohibited Transactions/ Self-Dealing

### (29 U.S.C. 1106(b)(1))

103.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

104.   29 U.S.C. § 1106(b)(1) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

105.   Defendants violated this prohibition in their management and control of Forfeited Plan Assets in the Plan. By allocating these Plan assets toward offsetting Pacific's contributions, thereby saving Pacific millions of

CLASS ACTION COMPLAINT

dollars in contribution expenses, Defendants dealt with the assets of the Plan in their own interest and for their own account.

106.    As a result of this prohibited conduct, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for employer matching contributions and lost earnings on those assets.

107.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets, and is subject to other equitable or remedial relief as appropriate.

## COUNT V

## Prohibited Transactions

## (29 U.S.C. 1106(a)(1))

108.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

109.    29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction    constitutes a direct or indirect. . . exchange. . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan."

110.    Defendants are parties in interest, as that term is defined under 29 U.S.C. § 1002(14), because they are Plan Fiduciaries and because Pacific is the employer of Plan participants.

111.    When Defendants elected to use Forfeited Plan Assets as a substitute for future employer contributions to the Plan, thereby saving Pacific millions of dollars in contribution expenses, Defendants caused the Plan to engage in

CLASS ACTION COMPLAINT

transactions that constituted a direct or indirect exchange of existing Plan assets for future employer contributions and/or use of Plan assets by or for the benefit of a party in interest.

112.  As a result of these prohibited transactions, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for employer matching contributions and lost investment returns on those assets.

113.  Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

## **PRAYER FOR RELIEF**

For these reasons, Plaintiffs, on behalf of the Plan and all similarly situated participants and beneficiaries, respectfully request that the Court:

    a.  find and declare that Defendants have breached their fiduciary duties and engaged in prohibited conduct and transactions as described above;

    b.  find and adjudge that Defendants are personally liable to make good to the Plan all losses to the Plan resulting from each violation of ERISA described above, and to otherwise restore the Plan to the position it would have occupied but for these violations;

    c.  order the disgorgement of all assets and profits secured by Defendants as a result of each violation of ERISA described above;

    d.  determine the method by which Plan losses under 29 U.S.C. §1109 should be calculated;

    e.  order Defendants to provide all accounting necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a);

    f.  remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

CLASS ACTION COMPLAINT

g. surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

h. certify the class, appoint Plaintiffs as class representatives, and appoint Stiegler Law Firm LLC and Chirinos Law Firm PLLC as class counsel;

i. award to Plaintiffs and the class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

j. order the payment of interest to the extent it is allowed by law; and

k. grant other equitable or remedial relief as the Court deems appropriate.

December 18, 2024                    Respectfully submitted,


                                     */s/ Charles J. Stiegler*
                                     _____
                                     **STIEGLER LAW FIRM**
                                     Charles Joseph Stiegler #245973
                                     Address: 318 Harrison Ave, Ste 104
                                     New Orleans, LA 70124-3126
                                     Phone: 504-267-0777  |  Fax: 504-513-3084
                                     Email: charles@stieglerlawfirm.com

                                     **CHIRINOS LAW FIRM PLLC**
                                     Tulio D. Chirinos (*Pro Hac Vice* forthcoming)
                                     Jenny M. Lewis (*Pro Hac Vice* forthcoming)
                                     370 Camino Gardens Blvd., Ste 106
                                     Boca Raton, FL 33432
                                     Telephone: (561) 299-6334
                                     tchirinos@chirinoslawfirm.com
                                     jlewis@chirinoslawfirm.com


                                     *Attorneys for Plaintiffs and Proposed Class*

CLASS ACTION COMPLAINT